USDC-SDNY
DOCUMENT
ELECTRONICALLY
FILED
DOC#:
DATE FILED: 01/25/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ASHLAND GLOBAL HOLDINGS INC.,

                Plaintiff,

         v.

VALVOLINE, INC.,

                Defendant.

No. 21-CV-00498 (RA)

OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Ashland Global Holdings Inc. ("Ashland") brings this action against Defendant Valvoline, Inc. ("Valvoline"), alleging that Valvoline breached a contract between the parties by failing to use certain tax attributes on its 2019 tax returns. Before the Court is Valvoline's motion to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Valvoline's motion is granted, albeit with leave to amend.

## BACKGROUND

The following facts are drawn from Ashland's Amended Complaint and are presumed to be true for purposes of resolving this motion.[1]

---

[1] Ashland argues that the Court may consider the ten exhibits attached to the Declaration of Scott Greg, filed contemporaneously with Ashland's opposition to the motion to dismiss. On a motion to dismiss, courts must limit their consideration to the complaint, to "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Exhibit One to the Greg Declaration is the TMA, which is already attached to Ashland's Amended Complaint and thus subject to the Court's consideration. Exhibits Two through Five and Seven through Nine are email communications that fall under none of the *Brass* categories. First, they were not attached to the Amended Complaint, mentioned in it, or incorporated into it by reference. Second, they are not subject to judicial notice, at least not for the purposes for which Ashland would have the Court consider them. *See Chiaramonte v. Animal Med. Ctr.*, No. 13-cv-5117 (KPF), 2014 WL 3611098, at *4 (S.D.N.Y. July 22, 2014) ("Judicial notice may be taken of documents outside the pleadings to establish the fact of their existence and the scope, but not the truth, of their content."). Third, Ashland did not "rel[y]upon the documents in framing" the Amended Complaint "because they are

Ashland is a global specialty chemicals company. Amended Complaint ("Compl.") ¶ 1. Valvoline is a marketer and supplier of branded lubricants and automotive services that formerly operated as a division of Ashland. *Id.* ¶¶ 2, 4. Ashland decided to separate out the Valvoline business in order to maximize shareholder value, and Valvoline became its own public company in early 2017. *Id.* ¶¶ 4-5. To effectuate that separation, in September 2016, Ashland and Valvoline entered into the Tax Matters Agreement ("TMA"), a contract that governs aspects of the companies' tax relationship and that sets out certain tax-related obligations the companies owe to one another. *Id.* ¶ 6.

The first relevant section of the TMA is Section 2.02, which states that any Valvoline tax return that "directly relates to . . . matters affecting any" Ashland tax return must be prepared in a manner consistent with that Ashland return and with "past practice." The relevant text of that provision is reproduced below:

> SECTION 2.02. Preparing of Tax Returns. . . .
> (b) Valvoline-Prepared Tax Returns. To the extent that any Separate Return prepared (or caused to be prepared) by Valvoline directly relates to . . . matters affecting any Ashland Global Consolidated Return, Ashland Global Combined Return or Separate Return prepared (or caused to be prepared) by Ashland Global (including any refund or other Tax Attribute to which a member of the Ashland Global Group is entitled), Valvoline shall prepare (or cause to be prepared) the relevant portion of such Separate Return on a basis consistent with such Ashland Global Consolidated Return, Ashland Global Combined Return or Separate Return and with past practice (except as required by applicable Law), in each case subject to Section 2.07. Valvoline shall notify Ashland Global of any such portions not

---

not referenced" in the Amended Complaint at all. *Sullivan v. Doctor's Assocs. LLC*, No. 19-cv-0719 (GHW), 2020 WL 353752, at *4 (S.D.N.Y. Jan. 17, 2020). Accordingly, the Court may not consider these exhibits. By contrast, Exhibit Six is the content of an email communication that Ashland specifically referred to and relied upon in its Amended Complaint. *See* Compl. ¶ 11. And Exhibit Ten consists of blank IRS federal tax return forms and blank Arkansas and Colorado state tax return forms, all of which are publicly available. *See* https://www.irs.gov/pub/irs-prior/f1120--2016.pdf; https://www.irs.gov/pub/irs-prior/f3800--2016.pdf; https://www.irs.gov/pub/irs-prior/f8827--2016.pdf; https://www.dfa.arkansas.gov/images/uploads/incomeTaxOffice/AR1100CT_2016_RE.pdf; https://tax.colorado.gov/sites/tax/files/DR0112Book_2016.pdf. The Court may take judicial notice of the existence of these forms. *See Kaff v. Nationwide Credit, Inc.*, No. 13-cv-5413 (SLT) (VVP), 2015 WL 12660327, at *3 n.2 (E.D.N.Y. Mar. 31, 2015) (taking judicial notice of IRS tax forms); Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Therefore, the Court may consider Exhibits Six and Ten in its analysis.

prepared on a basis consistent with any Ashland Global Consolidated Return, Ashland Global Combined Return or Separate Return prepared (or caused to be prepared) by Ashland Global or with past practice.

Compl. Ex. A ("TMA") § 2.02.  The term "past practice" is not defined in the TMA.

Section 2.07 of the TMA, which is referred to in Section 2.02, governs the procedure that Valvoline must follow if it wishes to take a position on its tax return that is inconsistent with "past practice":

> SECTION 2.07. Valvoline Tax Return Dispute Resolution.
> If Valvoline wishes to take a position . . . on a Separate Return prepared (or caused to be prepared) by Valvoline that is inconsistent with past practice, then in each case, Valvoline may do so only if:
> 
> (i) (A) Ashland Global's position on such Tax Return (1) is inconsistent with past practice and (2) would result in an increased payment obligation by Valvoline or any of its Affiliates . . . obligate Valvoline to make an increased indemnity payment . . . cause Valvoline or any of its Affiliates to incur any increased taxes for which it is not indemnified under this Agreement or adversely affect a refund or other Tax Attribute to which Valvoline or any of its Affiliates is entitled and
> (B) the position Valvoline wishes to take on such . . . Separate Return prepared (or caused to be prepared) by Valvoline, as the case may be, is consistent with past practice and permitted by applicable Law; or
> 
> (ii) (ii) Valvoline obtains an opinion from a Tax Advisor that there is no substantial authority for Ashland Global's position on such Tax Return prepared (or caused to be prepared) by Ashland Global pursuant to Section 2.01 or past practice, as applicable, and that there is substantial authority for the position Valvoline wishes to take on such . . . Separate Return prepared (or caused to be prepared) by Valvoline, as the case may be.

TMA § 2.07.  The TMA also discusses Legacy Tax Attributes ("LTAs") and obligations associated with using those LTAs.  An LTA is defined as "any Tax Attribute in existence at the opening of the taxable period that begins on October 1, 2016."  Compl. ¶ 8; TMA § 1.01.  A Tax Attribute, in turn, is defined as "any carryovers or carrybacks of net operating losses, net capital losses, excess tax credits and any other similar tax attributes as determined for Federal, state, local

3

or foreign tax purposes." Compl. ¶ 8; TMA § 1.01. Put simply, these LTAs may be claimed in order to offset income on state and federal tax returns. Under the TMA, Valvoline is required to reimburse Ashland for any financial benefit that Valvoline receives by using LTAs on its tax returns for the five years following the companies' separation. The full provision is reproduced below:

> SECTION 3.02. Tax Attributes.
> (a) Annual Payments. For each of the 5 taxable years after the date of Deconsolidation, Valvoline shall pay to Ashland Global the excess (if any) of the Hypothetical Tax Return Amount over the Actual Tax Return Amount, and Ashland Global shall pay to Valvoline the excess (if any) of the Actual Tax Return Amount over the Hypothetical Tax Return Amount.
> (i) For purposes of this Agreement, (A) "Actual Tax Return Amount" means the aggregate, actual tax liability reported on all Tax Returns for such taxable year that Valvoline files with a Taxing Authority (including all Tax Returns of members of the Valvoline Group) and (B) "Hypothetical Tax Return Amount" means the aggregate tax liability that would have been reported on such Tax Returns if the relevant member of the Valvoline Group were (1) not able to utilize any Legacy Tax Attributes but (2) able to utilize (one time, without duplication) any Tax Attributes of the Valvoline Group (other than Legacy Tax Attributes) that were not utilized on a Pro Forma Valvoline Return but that Ashland Global utilized on a Tax Return ("Valvoline Pro Forma Tax Attributes").
> (ii) The amount payable under this Section 3.02(a) shall be payable within 20 Business Days after the last Tax Return for such taxable year is filed by Valvoline; provided, however, that any amount payable by Ashland Global shall be due no sooner than 10 Business Days after receiving an invoice from Valvoline therefor.

TMA § 3.02. Finally, the TMA imposes upon the parties an obligation to "cooperate fully with all reasonable requests from the other party in connection with the preparation and filing of Tax Returns, audits, contests and other matters covered by this Agreement." TMA § 7.01.

"The core of the parties' current dispute arises from the fact [that] Valvoline did not reflect the use of Legacy Tax Attributes on its 2019 tax returns." Compl. ¶ 9. Ashland alleges that because "Valvoline's tax returns directly involve matters affecting an Ashland tax return within

the meaning of the TMA," Valvoline was obligated to comply with "past practices" in preparing those returns—and that Valvoline's decision not to use LTAs in its 2019 returns was "at odds with its past practices in this regard," therefore violating Section 2.02 of the TMA. *Id.* ¶¶ 9-10, 15. In repeatedly using the possessive "its," Ashland appears to allege that "past practices" means Valvoline's practices in its 2017 and 2018 tax returns. *See id.* ¶ 10 (describing "Valvoline's wrongful refusal to include Legacy Tax Attributes on its 2019 tax returns, as it did for its 2017 and 2018 tax returns"); *id.* ¶ 15 ("In an unexplained departure from the tax returns it prepared and filed for 2017 and 2018, and in breach of Section 2.02(b) of the TMA, Valvoline decided not to have its 2019 tax returns reflect the Legacy Tax Attributes, which thus directly affected Ashland."). "After learning of Valvoline's intent to breach the TMA, Ashland made an effort to discuss the situation with Valvoline and engage in a good faith attempt to resolve the situation." *Id.* ¶ 18. But according to Ashland, Valvoline "failed to articulate a good faith basis for why" it departed from its 2017 and 2018 practices. *Id.* ¶ 13. Ashland characterizes the concerns that Valvoline did express—"that it lacked sufficient knowledge to report many of the Legacy Tax Attributes on its 2019 tax return and that it was concerned with being audited if it did so"—as "disingenuous" and "devoid of merit." *Id.* ¶¶ 19, 21. In addition to allegedly violating Section 2.02 of the TMA, Valvoline's actions purportedly violated Section 7.01's mandate to cooperate fully with all reasonable requests in connection with the preparation and filing of tax returns. *Id.* ¶ 22.

Ashland contends that "Valvoline's compliance with the purpose and intent of the TMA" by using the LTAs in its returns "is the only means by which Ashland can receive the benefit of certain" LTAs, and that Valvoline's decision "to take no filing action as to the Legacy Tax Attributes . . . defeated the express purpose and reason for the TMA." *Id.* ¶¶ 7, 23. The unused

5

LTAs—representing the financial benefit purportedly owed to Ashland—carry a value of approximately $29 million. *Id.* ¶ 17.

Ashland filed its Amended Complaint on March 16, 2021. After Valvoline's motion to dismiss the Amended Complaint was fully briefed, the Court heard oral argument on January 12, 2022.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.*; claims that are merely "conceivable" or "consistent with" liability are insufficient, *Twombly*, 550 U.S. at 554, 570. In evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).[2] A court need not, however, credit "threadbare recitals of the elements of the cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In other words, "conclusory allegations or legal conclusions masquerading as factual conclusions" are not sufficient to state a claim. *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996).

## DISCUSSION

Ashland raises two claims: a claim for breach of the TMA and a related claim for declaratory judgment. Because Ashland fails to plausibly allege Valvoline's breach of the TMA,

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

the Court dismisses both claims without prejudice.

To state a claim for breach of contract under New York law, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). [3] "[I]f a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004). "A contract may be ambiguous when applied to one set of facts but not another." *Id*. "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016).

"An ambiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010). However, a court "should not find [a] contract ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning." *Id.* at 467. And it "is black-letter law that courts must reject interpretations of agreement provisions that are . . . illogical." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 173 (S.D.N.Y. 2015) (citing *Katel Ltd. Liab. Co. v. AT & T Corp.,* 607 F.3d 60, 65 (2d Cir. 2010)).

"[W]here the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence." *Feifer v.*

---

[3] The TMA contains a valid choice of law clause providing that New York law governs disputes over the construction of the TMA. TMA § 8.06; *see 19 Recordings Ltd. v. Sony Music Ent.*, 97 F. Supp. 3d 433, 438 n.4 (S.D.N.Y. 2015).

7

*Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002).  To put it bluntly, "[a]bsent ambiguity" on the face of the contract, "subjective intent is irrelevant." *Napster, LLC v. Rounder Recs. Corp.*, 761 F. Supp. 2d 200, 206 (S.D.N.Y. 2011).

To quote Ashland, "[t]he core of the parties' current dispute arises from the fact [that] Valvoline did not reflect the use of Legacy Tax Attributes on its 2019 tax returns." Compl. ¶ 8. This omission, Ashland contends, violated the TMA.  Both parties argue that the TMA's terms are unambiguous.  MOL at 6; Opp. MOL at 1 ("The language of the[] provisions is unambiguous.").  But the parties part ways over what that supposedly unambiguous language means.

As an initial matter, Ashland asserts in its pleading and briefing that the TMA's overall "purpose and intent" requires Valvoline to use LTAs in its tax returns.  Compl. ¶ 7.  But the Court cannot consider "purpose" or "intent" if the contractual language regarding a particular obligation is clear.  *Cf. Napster*, 761 F. Supp. 2d at 207 (concluding that "Napster's contention that it is improper to resolve 'a question of intention' at the motion to dismiss stage is meritless" because "[t]here is nothing ambiguous about the 2006 Agreement").  And nowhere on the face of the TMA does it state that Valvoline must use any, some, or all LTAs in its tax returns.  Section 3.02 provides that for five years after the deconsolidation, "Valvoline shall pay to Ashland Global the excess (if any) of the Hypothetical Tax Return Amount"—which is defined in relevant part as "the aggregate tax liability that would have been reported . . . if the relevant member of the Valvoline Group were . . . not able to utilize any Legacy Tax Attributes"—over the "Actual Tax Return Amount"— which in turn is defined as "the aggregate, actual tax liability reported on all Tax Returns for such taxable year that Valvoline files with a Taxing Authority."  TMA § 3.02.  While this provision certainly appears to assume that Valvoline will use LTAs in its tax returns, it does not require that Valvoline do so; indeed, the qualifier "if any" accounts for the possibility that Valvoline's actual

8

reported tax liability will be equivalent to the tax liability that would have been incurred if no LTAs were able to be used. The Court may not read affirmative obligations into a contract that do not exist in its plain terms.

Ashland's attempt to locate Valvoline's affirmative obligation to use LTAs in specific provisions of the TMA is unpersuasive, largely because Ashland asks the Court to make factual inferences that are not supported by Ashland's Amended Complaint. Ashland relies on Section 2.02 of the TMA, which states that, to the extent any Valvoline tax return "directly relates to matters . . . affecting any Ashland" tax return, Valvoline shall prepare its return in a manner consistent with "past practice." TMA § 2.02(b). According to Ashland, Valvoline's non-use of LTAs in its 2019 returns directly related to matters affecting Ashland's own returns, thus triggering the obligation for Valvoline to act consistently with "past practice"—and "past practice" allegedly meant using LTAs. But the current allegations in Ashland's Amended Complaint cannot plausibly support either part of that theory.

First, Ashland does not plausibly plead how Valvoline's failure to use LTAs in its 2019 tax returns "directly relates to matters . . . affecting any Ashland" tax return. Ashland's sole allegation purporting to establish this necessary predicate fact is a clause stating that "Valvoline's tax returns directly involve matters affecting an Ashland tax return within the meaning of the TMA." Compl. ¶ 9. The parties both take the position that the "directly relates to" requirement is a condition precedent of Valvoline's obligation to prepare its returns consistent with "past practice," and that Federal Rule of Civil Procedure 9(c)'s requirements therefore apply. *See* Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."); *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 685, 690 (N.Y. 1995) (explaining that a condition precedent is "an act or event, other than

9

a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises").

But even assuming that the TMA's "directly relates to" requirement is a condition precedent and thus subject to Rule 9(c), Ashland's pleading falls short. In a recent opinion this Court finds persuasive, Judge Nathan rejected the proposition that "by virtue of Rule 9(c), conditions precedent are subject to a lesser pleading requirement than the plausibility standard embodied in Rule 8(a)." *Dervan v. Gordian Grp. LLC*, No. 16-cv-1694 (AJN), 2017 WL 819494, at *3 (S.D.N.Y. Feb. 28, 2017). Instead, applying precedent interpreting Federal Rule of Civil Procedure 9(b), which largely parallels the language of Rule 9(c), *Dervan* held that "the occurrence or performance of a condition precedent—to the extent that it need be pled as a required element of a given claim—must be plausibly alleged in accordance with Rule 8(a)." *Id.* at *6. "Applying that rule" led to the conclusion that

> Dervan has failed to plausibly allege his own performance under the Agreement. As discussed, the Agreement provides that should Dervan choose to continue to work with Gordian as an outside consultant in regards to Thermacell through the closing of any transaction that generates a fee, then he would be entitled to 25% of any such fees received by Gordian. In pleading the performance of his own obligations, Dervan avers only that (i): since his termination he has chosen to work with Defendant as an outside consultant in regard to Thermacell; (ii) in that capacity, he provided valuable services; (iii) the Thermacell engagement (a term that is not defined in the SAC) resulted in the closing of the Thermacell Transaction; and (iv) that [a]ll conditions precedent to Defendant's contractual obligation to pay Plaintiff under the Agreement have occurred. These threadbare and, at least in part, conclusory statements do not provide the sufficient factual matter required for the Court to draw the reasonable inference that Dervan performed the sort of work that would entitle him to payment under the Agreement.

*Id.* Other courts have followed *Dervan*'s lead. *See, e.g.*, *Uncas Int'l LLC v. Crimzon Rose, Inc.*, No. 16-cv-9610 (JSR), 2017 WL 2839668, at *3 (S.D.N.Y. June 26, 2017); *Comerica Leasing Corp. v. Bombardier Inc.*, No. 16-cv-0614 (PGG), 2019 WL 11027701, at *8-13 (S.D.N.Y. Sept. 30, 2019); *O.F.I. Imports Inc. v. Gen. Elec. Cap. Corp.*, No. 15-cv-7231 (VEC), 2017 WL

3084901, at *6 (S.D.N.Y. July 20, 2017) (concluding that a plaintiff's "threadbare conclusory statement does not provide the sufficient factual matter that would allow the court to draw the reasonable inference that all conditions precedent have been satisfied"). To be sure, other judges in this District have taken the opposite approach. *See, e.g.*, *Randolph Equities, LLC v. Carbon Cap., Inc.*, No. 05-cv-10889 (PAC), 2007 WL 914234, at *4 (S.D.N.Y. Mar. 26, 2007) ("Pursuant to Rule 9(c), it is sufficient to aver generally that all conditions precedent have been performed or have occurred."). But, as *Dervan* observed, these cases predate *Twombly*'s and *Iqbal*'s modification of the notice pleading standard. Thus, the Court concludes that Ashland "must allege facts from which th[e] Court can plausibly infer that" Valvoline's use or non-use of LTAs in its 2019 tax returns directly related to matters affecting Ashland's own tax returns. *Comerica*, 2019 WL 11027701, at *9. Ashland's threadbare statement, which merely recites the language of the TMA, does not contain any factual matter that can support such an inference—that is, it does not set forth facts that, if true, would show that Valvoline's decision not to use LTAs in its 2019 returns directly related to a matter affecting an Ashland return.

The arguments in Ashland's briefing, which attempt to add new content to its pleading, do not convince the Court otherwise. Ashland first asserts that, "[a]s shown by . . . sample state and federal tax returns . . . the returns filed by Ashland have specific line items pertaining to 'Foreign tax credit', 'General business credit', 'Credit for prior year minimum tax', 'carryforward of general business credit', 'carryover of foreign taxes', and 'Net Operating Losses.'" Opp. MOL at 13-14. According to Ashland, these line items reveal the requisite relatedness between Valvoline's 2019 returns and one of Ashland's returns because "[e]ach of these line items falls within the definition of 'Tax Attributes' under the TMA." *Id.* But these sample return documents—which the Court may properly consider, *see infra* n.1—do not prove anything about "the returns filed by Ashland,"

11

because they are blank tax forms that have not been completed. In other words, these documents fail to explain how Valvoline's use of these LTAs (or decision not to use them) would directly relate to matters affecting Ashland's own tax returns. Ashland's reliance on these generic documents suggests that it believes that all it need do to state a claim is plead that Valvoline took a certain tax position with respect to LTAs. But Ashland must do more than that: it must allege *how* Valvoline's use or non-use of LTAs in fact implicated Ashland's own returns.[4] Ashland's second argument as to why Section 3.02's "directly relates to" requirement is satisfied fares no better. Ashland posits that "[t]here would have been no need for Legacy Tax Attribute to be defined [in the TMA] if the TMA did not cover their use by Valvoline and its associated obligations to Ashland." Opp. MOL at 14. But the TMA *does* cover the potential use by Valvoline of LTAs and the requirements that flow from that use, in Section 3.02. As acknowledged by Ashland's counsel during oral argument, however, Section 3.02 does not carry an independent obligation for Valvoline to use LTAs.

Even if Ashland had plausibly pleaded that Valvoline's non-use of LTAs on its 2019 tax returns directly related to matters that affected Ashland's own tax returns, the Court finds that Ashland still has not pleaded a breach of Section 2.02. Once the "directly relates to" requirement is satisfied, Section 2.02 is violated only if Valvoline's returns are not consistent with "past practice," a term that is not defined in the TMA. Ashland's Amended Complaint alleges that Valvoline's 2019 returns were not consistent with Valvoline's own past practice—that is, with Valvoline's 2017 and 2018 returns, which did use LTAs. *See* Compl. ¶¶ 9-11, 19 (asserting that Valvoline acted inconsistently with "its past practices" by not including LTAs, "as it did for its

---

[4] The Court notes that it is not persuaded by Valvoline's argument that Valvoline's non-use of LTAs could never affect Ashland's tax returns. Rather, it merely concludes that Ashland has not pleaded facts plausibly supporting the inference that Valvoline's non-use of LTAs had such an effect here.

2017 and 2018 tax returns"). To be sure, the term "past practice" appears to be ambiguous, because it is susceptible to more than one reasonable interpretation. But given that the TMA was executed in 2016, well before Valvoline had engaged in any practices regarding its 2017 and 2018 tax returns, the Court finds Ashland's reliance on this specific "past practice" to be misplaced in the context of the TMA. *See Wells Fargo*, 127 F. Supp. 3d at 173 ("[It] is black-letter law that courts must reject interpretations of agreement provisions that are . . . illogical."). That is, even if "past practice" has multiple reasonable interpretations, Ashland's reading of "past practice" as describing Valvoline's 2017 and 2018 practices, which had not yet even been employed when the term "past practice" was used in the TMA, is not one of those reasonable interpretations. In opposing summary judgment, Ashland advanced a new interpretation of the "past practice" that Valvoline was obligated to act consistent with: namely, Ashland's pre-TMA practice of taking advantage of LTAs on its consolidated tax returns. While this may well be a reasonable interpretation of "past practice," the Court sees no corresponding allegations in the Amended Complaint that Ashland had a "past practice" of claiming any or all relevant LTAs prior to the TMA or that this is the "past practice" that Valvoline acted consistent with in its 2017 and 2018 returns but acted inconsistent with in its 2019 returns. Nor was Ashland's counsel able to point the Court to any such allegations in the Amended Complaint at argument. Ashland may not amend its pleading through its opposition brief or its responses at oral argument. *See Red Fort Cap., Inc v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 476 (S.D.N.Y. 2019).[5]

---

[5] Ashland's argument that "past practice" cannot be defined without reference to extrinsic evidence does not preclude dismissal under these circumstances. *See* Opp. MOL at 11 ("Ashland does not agree that the Court's consideration of the TMA is limited to the four corners of the document because Section 2.02(b) expressly refers to 'past practice.'"). Although "past practice" does appear to be an ambiguous term, the Court does not need to arrive at a definitive interpretation of "past practice" to conclude that the interpretation that is proposed in Ashland's Amended Complaint, which appears limited to Valvoline's 2017 and 2018 conduct, is unreasonable under these circumstances.

Nor does Ashland's citation to Exhibit Six of the Gregg Declaration cure its pleading problems. Exhibit Six is an email from Valvoline to Ashland dated July 2019 in which Valvoline writes, "Would Ashland consider settling the

Ashland's final allegation is that Valvoline violated Section 7.01's requirement that a party fully cooperate with all reasonable tax-related requests from the other party. But here too, Ashland never clearly alleges that Valvoline failed to cooperate with a reasonable request by Ashland to include the LTAs in its 2019 tax returns. Ashland's statement that it "made an effort to discuss the situation with Valvoline and engage in a good faith attempt to resolve the situation," Compl. ¶ 18, is not equivalent to alleging that it requested Valvoline to use any or all LTAs on its returns, and that such a request was reasonable under the circumstances. "Discussions" and "attempts to resolve" situations could describe a wide range of statements, only one of which would be a request to take a certain action. Moreover, even if Ashland did plead that it requested that Valvoline use LTAs on its 2019 returns, and that this request was reasonable, it must also plead that Valvoline's ultimate decision not to use those LTAs constituted a failure to *cooperate* with Ashland, as opposed to a mere failure to accede to Ashland's position.

"Ordinarily a plaintiff should be granted leave to amend at least once after having the benefit of a court's reasoning in dismissing the complaint." *Obra Pia Ltd. v. Seagrape Invs. LLC*, No. 19-cv-7840 (RA), 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021). Although the Court "has discretion to dismiss with prejudice if it believes that amendment would be futile," *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, No. 08-cv-7508 (SAS), 2009 WL 3346674, at *2 (S.D.N.Y. Oct. 15, 2009), that Ashland may be able to plead additional facts that could cure the deficiencies the Court has identified. Specifically, Ashland may plead additional facts explaining how Valvoline's non-use of LTAs affected Ashland's tax returns; additional facts supporting a

---

TMA payable relating to the legacy tax attributes . . . inherited by Valvoline?" Gregg Dec. Ex. 6 at 1. But this communication does not explain how Valvoline's 2019 tax returns directly affected matters relating to Ashland's tax returns or how Valvoline's decision not to use LTAs was inconsistent with a pre-TMA "past practice." At most, this communication shows that Valvoline may have been attempting to avoid or settle a potential conflict—in which case it would likely be inadmissible to prove Valvoline's liability. *See* Fed. R. Evid. 408.

14

reasonable interpretation of the term "past practice" by which Valvoline may have acted inconsistently with such practice in its 2019 returns; and additional facts regarding how Valvoline's decision not to use LTAs constituted a failure of cooperation with a reasonable request under the TMA. Accordingly, the Court's dismissal is without prejudice.

## CONCLUSION

For the foregoing reasons, Valvoline's motion to dismiss is granted. If Ashland intends to file a Second Amended Complaint, it shall do so by no later than February 15, 2022. Failure to file a Second Amended Complaint by that date will result in dismissal of this case with prejudice. The Clerk of Court is respectfully directed to terminate the motion at docket number 22.

SO ORDERED.

Date: January 25, 2022
New York, New York

_____
Hon. Ronnie Abrams
United States District Judge